## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | |
| | : | |
| KESSEY DURAND, | : | VIOLATION: |
| | : | 18 U.S.C. § 1343 |
| Defendant. | : | (Wire Fraud) |
| | : | |
| | : | FORFEITURE: |
| | : | 18 U.S.C. § 982(a)(2) and § 981(a)(1); |
| | : | and 21 U.S.C. § 853(p) |

## INFORMATION

The United States Attorney charges that:

Case: 1:19-cr-00070
Assigned To : Chief Judge Howell, Beryl A.
Assign. Date : 2/21/2019
Description: INFORMATION (A)

### Background

At all times relevant to this Information:

1.      "Metabank" is a federally chartered savings bank headquartered in Sioux Falls, SD. It operates Meta Payment Systems, which offers various financial products, including prepaid reloadable debit cards.

2.      The Pension Benefit Guaranty Corporation ("PBGC") is a federal corporation within the U.S. Department of Labor. PBGC is headquartered in Washington, DC, with field offices in five locations including Miami, FL, as well as a call center in Kingstowne, VA. PBGC provides pension benefits to participants of private-sector defined benefit plans after those plans are terminated.

3.      PBGC maintains a plan participant database that contains the names and the associated pension plan of the participants as well as unique identifiers such as social security numbers, dates of birth, residential details, and banking and routing information.

4.      PBGC transmits electronic funds transfer instructions every month from Washington, DC, to PBGC's paying agent, BANK-1.  BANK-1 pays monthly benefits to retirees and beneficiaries on behalf of PBGC.

5.      PBGC allows plan participants to conduct certain transactions regarding their pension benefits through an online web application called MyPBA, accessible at https://mypba.pbgc.gov, that is hosted on a server located in Washington, DC.  These transactions include applying for benefits, changing address or email information, and applying and editing electronic direct deposit ("EDD") information.

6.      MyPBA accounts can be created with a plan participant's first and last name, social security number, any email address, and the PBGC pension plan number.  Once the account is created, the user can make changes to EDD bank routing, view payment history, view images of previously mailed checks, update personal information, request benefit estimates, and apply for benefits.

7.      On March 31, 2003, PBGC assumed responsibility for a retirement income plan for COMPANY-1, and began paying the defined benefit pensions of some of COMPANY-1's employees and retired employees in accordance with that plan.

### The Defendant

8.      At all times relevant to this Information, KESSEY DURAND, the defendant, resided in Miami, FL.

9.      From on or about January 2 to February 23, 2018, KESSEY DURAND, the defendant, worked at PBGC's Miami field office.  As part of his responsibilities, DURAND had access to the database containing COMPANY-1's pension plan participant data.

## The Scheme to Defraud

10.     From on or about January 13 to June 18, 2018, KESSEY DURAND, the defendant, engaged in a scheme to defraud PBGC out of monthly payments to COMPANY-1's pension plan participants by redirecting EDD payments to Metabank accounts controlled by DURAND.

11.     As part of this scheme, KESSEY DURAND, the defendant, used information he obtained from the PBGC pension plan participant database to create and change MyPBA accounts associated with COMPANY-1's pension plan participants through the MyPBA web application.  Using MyPBA, DURAND changed the EDD information for those plan participants so that PBGC, through BANK-1, would pay those participants' monthly benefits to DURAND rather than the participants.

12.     In other instances, KESSEY DURAND, the defendant, used information he obtained from the PBGC pension plan participant database to change EDD information for COMPANY-1's pension plan participants by calling the PBGC call center.  DURAND thereby instructed PBGC call center employees to change the EDD information for those plan participants so that PBGC, through BANK-1, would pay those participants' monthly benefits to DURAND rather than to the participants.

13.     In no case did KESSEY DURAND, the defendant, have the lawful authority to change EDD information for any COMPANY-1 pension plan or to use personal identifying information to access, to set up, or to change any accounts for any such participant.

//

//

//

//

## COUNT 1
### 18 U.S.C. § 1343
(Wire Fraud)

The United States Attorney further charges:

14.     The allegations contained in paragraphs 1 through 13 are repeated and realleged as though fully set forth herein.

15.     On or about January 16, 2018, in the District of Columbia and elsewhere, KESSEY DURAND, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice. At all relevant times, DURAND acted with the intent to defraud.

16.     On or about January 16, 2018, KESSEY DURAND, the defendant, used the MyPBA web application to change the EDD information for the account of victim R.G. to a Metabank account, ending in 3200, controlled by DURAND, thereby obtaining $6,323.92 of R.G.'s monthly pension payment.

17.     Through the scheme and artifice to defraud alleged herein, KESSEY DURAND, the defendant, acquired approximately $39,663 in pension payments to which he was not entitled, and he attempted to acquire a total of approximately $107,123.46 in pension payments to which he was not entitled.

(All in violation of Title 18, United States Code, Section 1343.)

### FORFEITURE ALLEGATION

18.     As a result of committing the offense alleged in Count One of this Information, KESSEY DURAND, the defendant, shall forfeit to the United States, pursuant to Title 18,

4

United States Code, Section 982(a)(2)(A), any property constituting or derived from proceeds obtained directly or indirectly as a result of the commission of that offense. The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of that offense.

19.    As a result of committing the offense alleged in Count One of this Information, KESSEY DURAND, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(D)(vi) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to that offense. The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to that offense.

## Substitute Assets Provision

20.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(Title 18, United States Code, Section 982(a)(2)(A); Title 18, United States Code, Section 981(a)(1)(D)(vi); Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p))

_____/s/_____

JESSIE K. LIU
UNITED STATES ATTORNEY